OPINION
Defendant-appellant Emrie Smith appeals his conviction of murder which was entered in the Mahoning County Common Pleas Court after the jury returned a guilty verdict. For the following reasons, appellant's conviction is affirmed.
 STATEMENT OF THE CASE
In September 1998, appellant was indicted for the murder of Lynette Charity who was shot and killed on August 13, 1998. The indictment contained a firearm specification. On December 7, 1998, a jury found appellant guilty as charged. Appellant was sentenced accordingly. The within timely appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth two assignments of error, the first of which provides:
 "THE TRIAL COURT IS IN ERROR AND THE VERDICT MUST BE REVERSED WHEN, ONCE THE ISSUE OF COMPETENCY IS RAISED, THE TRIAL COURT FAILS TO MAKE AN AFFIRMATIVE DETERMINATION OF THE APPELLANT'S COMPETENCY."
On November 19, 1998, appellant's attorney filed a motion for a competency evaluation. The state objected on the grounds that the trial was scheduled for November 23. Rather than begin the trial on November 23, the court held a hearing on appellant's motion at which appellant testified. In response to questions, he described the function of the jury, the prosecutor and the defense attorney. Appellant then talked of vague problems he had during his service in the Navy and his discharge therefrom. The court then granted appellant's request for a competency evaluation.
The Forensic Center evaluated appellant on November 24. Dr. Palumbo presented an oral report to the court on November 25.[1] The parties were permitted to examine Dr. Palumbo who testified that appellant was competent to stand trial. He found no evidence of gross mental disorder, mood disorder, psychotic thinking or hallucinations. He stated that appellant's verbal skills tested in the low to average range. He noted that appellant did satisfactorily on the standard questions used in determining competency to stand trial. For instance, appellant knew the crime with which he was charged, the name of the victim, the date of the alleged offense, the name of his attorney and the definitions of guilty, not guilty, not guilty by reason of insanity and plea bargain. Appellant stated that he understood and trusted his attorney. At the end of the hearing, the court found appellant competent to stand trial. Thus, the trial started that day.
On appeal, it appears that appellant is arguing that the court failed to hold a hearing on competency and failed to rule on the issue of competency. Initially, we point out that the state supplemented the record that contained four volumes of trial transcripts with the hearing transcripts from November 23 and 25. These transcripts demonstrate that the court held a hearing on appellant's request for an evaluation and a hearing on competency as provided in R.C. 2945.37 (B). The November 25 transcript of the competency hearing also reveals that the court stated on the record that appellant was competent to stand trial. Hence, the arguments raised under this assignment of error are without merit.
If appellant is complaining that the court erred by failing to file an entry journalizing its finding that appellant was competent to stand trial, we find that the lack of a judgment entry repeating this finding does not constitute reversible error.
"If the issue of a defendant's competence to stand trial is raised and if the court, upon conducting the hearing provided for in section 2945.37 of the Revised Code, finds that the defendant is competent to stand trial, the defendant shall be proceeded against as provided by law." R.C.2945.38(A). To the contrary, if the defendant is found incompetent, then the court shall order him to treatment. R.C. 2945.38(B).
Under the plain language of the relevant statute, the court shall proceed with the case upon finding the defendant competent. There is no requirement that the court issue a judgment entry. It is only when the court finds the defendant incompetent that the court must file an order. R.C. 2945.37(G); R.C. 2945.38(B). In the case at bar, the court found the defendant competent on the record and proceeded with the scheduled jury trial. Accordingly, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE TRIAL COURT ERRED WHEN IT CONVICTED THE DEFENDANT AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Weight of the evidence concerns the effect of the evidence in inducing belief. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. A reviewing court shall not reverse a decision on manifest weight grounds unless it determines that the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. A reversal on these grounds occurs only in exceptional circumstances since witness credibility and weight of the evidence are primarily questions for the fact-finder, especially when that fact-finder is a jury. State v. DeHass (1967), 10 Ohio St.2d 230,231.
In evaluating the weight of the evidence, the following items are relevant. On the morning of August 13, 1998, firefighters put out flames that had engulfed a car registered to seventeen-year-old Lynette Charity. On August 17, Lynette's partially burned body was discovered near the entrance of an abandoned steel mill. (Tr. 502). The coroner testified that she died of a gunshot wound to the head and neck. He stated that the injury was consistent with a medium or large caliber handgun, such as a .45 caliber. (Tr. 758-759). He opined that the gun was held up under her chin when it was fired. (Tr. 756).
The victim's mother testified that Lynette had been staying at appellant's house at the beginning of August 1998 and had been dating appellant for approximately four months. (Tr. 55). Ronald Cash testified that on the night of August 12, he helped an intoxicated Lynette get into appellant's car at a bar. (Tr. 97). Mark Briskey testified that he saw Lynette and appellant outside the bar around 1:00 a.m. on August 13. He stated that when the bar closed at 2:30 a.m., he saw appellant again. He told appellant that he was coming over to retrieve a gun that he had left there. (Tr. 254). When Mr. Briskey arrived at appellant's apartment, he saw Lynette laying naked on the couch. Later, as he was trying to get his car started, he saw Ramona Moton walking towards appellant's apartment with a tackle box. A few minutes later, she jumped into his car and stated that appellant just shot Lynette in the face. (Tr. 268). Mr. Briskey also testified that appellant owned a .45 caliber handgun. (Tr. 274).
Craig Bembry testified that at approximately 2:30 a.m. on August 13, he was standing outside the apartment building where appellant lives. (Tr. 320). He saw Ms. Moton carrying a tackle box, and he briefly spoke to her. He watched her go to appellant's apartment where she appeared to be ready to knock. He noticed that she was looking in appellant's window. Suddenly, she began to run. (Tr. 321). Mr. Bembry saw her get into a car. Thereafter, he walked to Ms. Moton's apartment where he found her crying and lowering the shades. Ms. Moton informed him that she saw appellant shoot his girlfriend. (Tr. 326).
Ms. Moton testified that she stole a tackle box around 2:30 a.m. on August 13. She decided to attempt to sell the tackle box to appellant. She stated that she knocked on appellant's door and received no answer. (Tr. 121). She testified that she looked in an open window and saw Lynette asleep on the couch with a cover over her. She stated that she called for Lynette and appellant but no one answered her. Ms. Moton testified that she then witnessed appellant quickly walk toward the couch from upstairs and shoot Lynette in the face with a handgun. (Tr. 126). Ms. Moton then fled the scene.
During the day of August 13, Eric Cash went to appellant's apartment to cut his hair. He testified that he watched appellant wash the refrigerator and the door frames. (Tr. 404). He also testified that appellant refused to allow him to use the restroom which was upstairs. Karlin Adams testified that appellant asked him how long gun shot residue remains on one's hands. (Tr. 424).
When the police executed a search warrant for appellant's apartment on August 19, they found that his apartment had recently experienced a fire. Part of the couch on which Lynette was allegedly shot was badly burned. A box of .45 caliber ammunition was recovered.
Appellant claims that Ms. Moton's testimony is not credible or reliable. He states that she is a thief who was intoxicated on the night of the alleged incident. He claims that Ms. Moton's testimony that he shot Lynette in the face contradicts the coroner's testimony that she was shot from under her chin. He points out that Ms. Moton did not approach police for four days. He also notes that Ms. Moton was facing charges at the time of her testimony and thus had a self-serving motive for testifying.
The complaints which appellant uses to support his manifest weight argument were evaluated by the jury. The jury occupied the best vantage point from which to evaluate the gestures, voice inflections and demeanor of the witnesses. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615;Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The jury found that the testimony of various witnesses was credible and incriminating. There is nothing in the record to suggest that the jury clearly lost its way and created a scenario where this court must reverse to avoid a manifest miscarriage of justice. The greater amount of credible evidence weighs heavily in the state's favor. Hence, appellant's conviction is not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
[1] Dr. Palumbo had advised the court that he could not prepare a written report in one day. Thus, the parties consented to the use of an oral report so that trial could begin on November 25 if appellant was found competent.